Cheryl S. Chang (SBN 237098)
BLANK ROME LLP
Chang@BlankRome.com
2029 Century Park East, 6th Floor
Los Angeles, CA 90067
Telephone: (424) 239-3400
Facsimile: (424) 239-3434

David C. Radulescu, Ph.D. (*pro hac vice*)
david@radip.com
Etai Lahav (*pro hac vice*)
etai@radip.com
Jonathan Auerbach (*pro hac vice*)
jonathan@radip.com
RADULESCU LLP
5 Penn Plaza, 19th Floor
New York, NY 10001
Telephone: (646) 502-5950
Facsimile: (646) 502-5959

*Attorneys for Plaintiff Finisar Corp.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FINISAR CORPORATION,<br>Plaintiff,<br><br>v.<br><br>CAPELLA PHOTONICS, INC.,<br><br>Defendant. | Case No. 3:20-cv-07629-EMC<br><br>**NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF FINISAR CORPORATION'S MOTION FOR PRELIMINARY INJUNCTION OF CAPELLA PHOTONICS, INC.'S CO-PENDING CLAIMS AGAINST FINISAR'S CUSTOMERS**<br><br>**Date: January 14, 2021**<br>**Time: 1:30 p.m.**<br>**Courtroom: Courtroom 5 – 17th Floor**<br><br>**Hon. Edward M. Chen**<br><br>**REDACTED PUBLIC VERSION OF DOCUMENT SUBJECT TO FINISAR'S MOTION TO SEAL** |

# **TABLE OF CONTENTS**

I.    Notice of Motion ........................................................................................1

II.   Relief Sought ..............................................................................................1

III.  Introduction ................................................................................................1

IV.   Statement of the issues ..............................................................................3

V.    Factual Background ....................................................................................3

      A.    The parties ........................................................................................ 3

      B.    Technology background ................................................................... 3

      C.    The Patents-in-Suit .......................................................................... 5

      D.    Capella's suits against Finisar's customers and its infringement contentions ....... 7

      E.    The Recent *Cisco v. Capella* Case .................................................. 9

      F.    The Four Prior Capella Cases Before This Court............................ 9

VI.   Legal Standard..........................................................................................10

VII.  Argument ..................................................................................................10

      A.    Under *Katz*, Capella should be enjoined from prosecuting claims against Finisar's customers ................................................................. 10

            1.    The customer suit exception applies to this case...................... 14

            2.    An injunction of Capella's claims against Finisar's customers relating to Finisar's products is warranted .................................. 16

      B.    Even under the traditional injunction standard, Capella's claims against Finisar's customers should be enjoined................................. 18

VIII. Conclusion................................................................................................20

MEMORANDUM OF POINTS AND AUTHORITIES I/S/O PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Capital Sec. Systems, Inc. v. ABNB Federal Credit Union*,
No. 2:14-cv-265, 2014 WL 5334270 (E.D. Va. Oct. 20, 2014) ............................................. 13

*Cisco Systems, Inc. v. Capella Photonics, Inc.*,
Case No. 3:20-cv-01858-EMC ......................................................................................... 9, 17

*CyWee Grp. Ltd. v. Huawei Device Co.*,
No. 17-cv-00495, 2018 WL 4002776 (E.D. Tex. Aug. 22, 2018) ......................................... 13

*Delphi Corp. v. Automotive Techs. Int'l, Inc.*,
No. 08-CV-11048, 2008 WL 2941116 (E.D. Mich. Nov. 25, 2008) ...................................... 11

*Finisar Corp. v. Cheetah Omni, LLC*,
No. 11-cv-15625, 2012 WL 12931574 (E.D. Mich. July 5, 2012) ......................................... 15

*Finisar Corp. v. Cheetah Omni, LLC*,
No. 11-cv-15625, 2012 WL 12931575 (E.D. Mich. Nov. 12, 2012) ................... 14, 15, 19, 20

*In re Google Inc.*,
588 F. App'x 988 (Fed. Cir. 2014) ..........................................................................12, 13, 17

*Grecia v. Target Corp.*,
No. 17-CV-00323-YGR, 2018 WL 4283358 (N.D. Cal. Sept. 7, 2018 ) .............................. 13

*IWP Banquet, LLC v. Target Corp.*,
No. 16–02082, 2016 WL 9450448 (C.D. Cal. Dec. 15, 2016) .............................................. 13

*Kahn v. General Motors Corp.*,
889 F.2d 1078 (Fed. Cir. 1989) ...................................................................................... 13, 14

*Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi
Negara*, 500 F.3d 111 (2d Cir. 2007) .................................................................................. 19

*Katz v. Lear Siegler, Inc.*,
909 F.2d 1459 (Fed. Cir. 1990) ....................................................................................*passim*

*Lab. Corp. of Am. Holdings v. Chiron Corp.*,
384 F.3d 1326 (Fed. Cir. 2004) ........................................................................................... 10

*Microsoft Corp. v. Motorola, Inc.*,
696 F.3d 872 (9th Cir. 2012) ............................................................................................... 19

*In re Nintendo Co.*,
544 F. App'x 934 (Fed. Cir. 2013) ...................................................................................... 17

ii

*In re Nintendo of Am., Inc.*,
　756 F.3d 1363 (Fed. Cir. 2014) ............................................................................. 2, 10, 12, 13

*ProBatter Sports, LLC v. Joyner Techs., Inc.*,
　463 F. Supp. 2d 949 (N.D. Iowa 2006) ................................................................................. 16, 18

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*,
　657 F.3d 1349 (Fed. Cir. 2011) ............................................................................................ 10, 16

*Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Tex. Sys.*,
　458 F.3d 1335 (Fed. Cir. 2006) ............................................................................................ 10, 16

*U.S. Ethernet Innovations, LLC v. AT&T Mobility, Inc.*,
　No. 10-cv-5254-CW, 2014 U.S. Dist. LEXIS 108684 (N.D. Cal. Aug. 6, 2014) ................... 14

MEMORANDUM OF POINTS AND AUTHORITIES I/S/O PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

I.    **NOTICE OF MOTION**

**PLEASE TAKE NOTICE** that on January 14, 2021, at 1:30 p.m., in Courtroom 5 of the above Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, 17th Floor, before the Honorable Edward M. Chen, pursuant to Civil L.R. 7, Plaintiff Finisar Corporation ("Finisar" or "Plaintiff") hereby respectfully moves this Court for a preliminary injunction enjoining Defendant Capella Photonics, Inc.'s ("Capella" or "Defendant") co-pending claims of infringement of U.S. Patent Nos. RE 47,905 ("the '905 Patent") and RE 47,906 ("the '906 Patent") against Finisar's customers implicating Finisar's products in the Eastern District of Texas, Civil Action Nos. 2:20-cv-76 and 2:20-cv-77 ("the Texas Actions").

II.    **RELIEF SOUGHT**

Finisar requests the entry of an order enjoining Capella from litigating its co-pending claims of infringement of the '905 and '906 Patents against Finisar's customers implicating Finisar's products in the Texas Actions.

III.    **INTRODUCTION**

Finisar brought this declaratory judgment action because Capella, a company that owns patents but does not manufacture any products, is aggressively pursuing Finisar's customers asserting patent infringement by optical transport systems or platforms ("OTS") incorporating Finisar's optical switches.  Finisar is a leading provider of optical subsystems, modules, and components that are incorporated into OTS.  The products at issue in this action are a type of an optical switch called a Wavelength Selective Switch ("WSS"), which is ultimately deployed in fiber optic communications networks (*e.g.*, Verizon FiOS cable services).

This Court should enjoin California resident Capella—which has no presence in Texas— from pursuing Finisar's customers Infinera and Fujitsu in suits pending in the Eastern District of Texas.[1]  Under the well-established "customer-suit exception" to the first-to-file rule, direct suits between a patentee and a manufacturer are favored over indirect, piece-meal suits with diverse

---

[1] Capella had also asserted the '905 and '906 Patents against Ciena Corp., a third Finisar customer, in the District of Maryland.  As discussed below, the court in that action granted Ciena's motion to transfer the case to this District on December 1, 2020.

1

MEMORANDUM OF POINTS AND AUTHORITIES I/S/O PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

customers.  Capella has not asserted its patents against Finisar directly, presumably because Finisar, as the manufacturer of the accused optical switches, is in a much better position and has a greater incentive to defend against Capella's allegations.  This case, unlike the two Texas actions, will resolve Capella's claims globally with respect to Finisar's accused optical switches.  This is precisely the circumstance warranting an injunction under the customer-suit exception.  Thus, Capella's claims against Finisar's customers in the Texas actions should be enjoined and adjudicated by this Court, whose determination would have a global effect.

This is not the first time that a non-practicing entity has pursued an infringement case against Finisar and its WSS products in a round-about manner, instead of suing Finisar directly. In 2011, Cheetah Omni, LLC also sued a number of Finisar's customers in the Eastern District of Texas, alleging that Finisar-provided WSSs infringed its patents.  In response, Finisar filed a declaratory judgment suit in Cheetah's home district and asked the court there to enjoin Cheetah from prosecuting its claims against Finisar's customers in the Texas actions.  The court there found that the customer-suit exception applied and enjoined Cheetah from prosecuting its claims against Finisar's customers.  Finisar seeks the same relief here for similar reasons.

Federal Circuit law is clear on this point.  "[L]itigation . . . brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer."  *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1463-64 (Fed. Cir. 1990); *see also In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014).  For this reason, the Federal Circuit empowers courts presiding over a manufacturer's declaratory judgment action, such as this one, to enjoin collateral and duplicative customer suits.  *Katz*, 909 F.2d at 1463-64.  The need for an injunction is so plain that the Federal Circuit does not require a heightened burden of proof under the traditional four-part preliminary injunction test.  *Id.* at 1462-63.  Rather, if "the disposition of one case would be dispositive of the other," the Court should enjoin the patent owner from prosecuting the other suits.  *Id.*

The question of whether Finisar's optical switches infringe should be decided by this Court and not by the court in the Eastern District of Texas.  Here, this Court will either (i) determine that Finisar's optical switches—and thus any use or sale of those products by Finisar's

MEMORANDUM OF POINTS AND AUTHORITIES I/S/O PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

customers—do not infringe; or (ii) find that Finisar's optical switches do infringe and assess

damages, which would exhaust any separate claim to damages against Finisar's customers.

For these reasons, Finisar respectfully requests that the Court enjoin Capella from

prosecuting any claims against Infinera and Fujitsu for infringement of the Patents-in-Suit based

on Finisar's WSS products, pending resolution of this action.

**IV.    STATEMENT OF THE ISSUES**

Whether the Court should enjoin Capella under the customer-suit exception to the first-to-

file rule from prosecuting its claims based on Finisar's optical switches against Infinera and

Fujitsu in co-pending actions in the Eastern District of Texas.

**V.    FACTUAL BACKGROUND**

**A.    The parties**

Finisar is a company that was founded in 1988 in Menlo Park, California and is

headquartered in Sunnyvale, California.  Finisar is a leader in the area of optical

telecommunications and a pioneering innovator in the field of optical telecommunication

networks, such as the fiber optics networks that provide internet, telephone, and cable service to

much of the United States.

Capella was a manufacturer of fiber optic network equipment, including wavelength

selective switches, but is no longer an operating company.  Its principal place of business is in

Mountain View, California.

**B.    Technology background**

The technology at issue in this case relates to wavelength selective switches that can be

found in, for example, fiber optic network systems that handle data traffic generated by the

myriad of Internet-accessing devices available today.  Such data is commonly transmitted by

optical signals (light beams) of various wavelengths through optic fibers.

An important building block in these fiber optic network systems is an optical add/drop

multiplexer or "OADM."  An OADM allows for more efficient routing of data traffic compared

to older technology that required the conversion of optical signals into electronic signals and vice

versa.  This is accomplished through the use of adjustable optical switches, which allow the

MEMORANDUM OF POINTS AND AUTHORITIES I/S/O PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

1   OADM to be reconfigurable, i.e. a reconfigurable optical add/drop multiplexer or "ROADM".

2         A ROADM can comprise a wavelength multiplexer, a wavelength demultiplexer, and a

3   series of wavelength selective switches, or "WSS."  A WSS is an optical switch that can have one

4   or more input ports and one or more output ports and can flexibly route (or "switch") optical

5   signals between the multiple input ports and multiple output ports on a per-wavelength basis.  A

6   WSS is often referred to and characterized by the type of switching element that is used to direct

7   the optical signals within the WSS.

8         For example, the simplest and earliest WSS employed a Micro-Electro-Mechanical

9   System ("MEMS") switching element, referred to as a MEMS WSS.  More specifically, a MEMS

10  WSS uses an array of mechanical micromirrors (depicted below) to steer by reflecting the

11  individual optical signals through the movement of the micromirrors in two dimensions:



20  Capella's '905 and '906 Patents (discussed further below) describe the above type of MEMS

21  WSS products that employ a movable micromirror for steering an optical signal through

22  reflection of light by tilting a mirror in two dimensions.

23        In contrast, a newer switching technology, not employing micromirrors, or two-

24  dimensional physical motion, or even the use of optical reflection to steer an optical beam, was

25  enabled by Finisar.  This revolutionary technology is referred to as Liquid Crystal on Silicon or

26  "LCOS" for short.  A WSS that employs an LCOS optical processor switching element contains

27  no moving parts or movable micromirrors for steering an optical beam through reflection of light.

28  Instead, an LCOS WSS uses liquid crystal pixels on silicon to diffract light and enable switching

4

without micromirrors, motion or optical reflection by tilting micromirrors, as depicted below.

(Note that the liquid crystal pixels are smaller than the diameter of a human hair so they are not

distinctly visible in the image, other than seeing a rainbow-like pattern on the surface of the

device.)



The MEMS WSSs and LCOS WSSs are two distinct types of WSSs.  As discussed in

Finisar's Complaint, Finisar's Wavelength Selective Switch products using the Dynamic

Wavelength Processor platform ("DWP"), the Edge Wavelength Processor platform ("EWP"),

the single low profile platform ("SLP"), and the Dual platform are all based on LCOS

technology.  Cameron Decl. [2] ¶ 3.  None of these products are based on movable mirrors using

MEMS technology.  *Id.*  Capella and Finisar have a dispute over whether the Patents-in-Suit can

extend to systems employing Finisar's LCOS WSS technology, as discussed below.

### C.    The Patents-in-Suit

Capella's '905 and '906 Patents are purportedly directed to "a wavelength-separating-

routing (WSR) apparatus and method which employ an array of fiber collimators serving as an

input port and a plurality of output ports; a wavelength-separator; a beam-focuser; and an array of

---

[2] "Cameron Decl." refers to the Declaration of Craig Cameron in support of Plaintiff's Motion,
filed concurrently herewith.

MEMORANDUM OF POINTS AND AUTHORITIES I/S/O PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

1   channel micromirrors." Ex. 3,[3] '905 Patent, 3:66-4:3; Ex. 4, '906 Patent, 4:8-12.

2      Figure 1A of the '905 and '906 Patents depicts the claimed invention of representative

3   claims 23 of the '905 Patent and claim 68 of the '906 Patent:



Fig. 1A

12  As the patents provide, "a multi-wavelength optical signal emerges from the input port

13  110-1 [a]. The diffraction grating 101 [b] angularly separates the multi-wavelength optical signal

14  into multiple spectral channels, which are in turn focused by the focusing lens [c] into a spatial

15  array of distinct spectral spots (not shown in FIG. 1A) in a one-to-one correspondence. The

16  channel micromirrors 103 [d] are positioned in accordance with the spatial array formed by the

17  spectral spots, such that each channel micromirror receives one of the spectral channels. The

18  channel micromirrors 103 are individually controllable and movable, e.g., pivotable (or rotatable)

19  under analog (or continuous) control, such that, upon reflection, the spectral channels are directed

20  into selected ones of the output ports 110-2 through 110-N [e] by way of the focusing lens 102

21  and the diffraction grating 101." *See, e.g.*, Ex. 3, '905 Patent, 7:11-29.  The claims of the '905

22  Patent include elements **[a], [b], [d],** and **[e]** described above, whereas the claims of the '906

23  Patent include elements **[a] – [e]**.

24      The '905 Patent and '906 Patent disclose that the "channel micromirrors [depicted in

25  Figure 1A as element 103] may be provided by silicon micromachined mirrors, reflective ribbons

26

27  ───────────────

28  [3] The exhibits referenced herein are attached to the Declaration of Etai Lahav in Support of
    Plaintiff's Motion, which has been concurrently filed with this Motion.

MEMORANDUM OF POINTS AND AUTHORITIES I/S/O PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

(or membranes), or other types of beam-deflecting elements known in the art." *Id.* at 9:22-25.
Notably, as Finisar will establish in this action, the '905 Patent and '906 Patent do not disclose or
claim the use of Finisar's later-developed LCOS-based switches.

**D.    Capella's suits against Finisar's customers and its infringement contentions**

As discussed in Finisar's complaint, on March 16 and 17, 2020, Capella filed patent
infringement actions in the United States District Court for the Eastern District of Texas, alleging
infringement of the '905 Patent and the '906 Patent against manufacturers of ROADM products,
including Tellabs, Inc., Infinera America Inc., Infinera Corporation, Infinera Optical Networks,
Inc., Coriant (USA) Inc. (collectively, "Infinera"); and Fujitsu Network Communications, Inc.
("Fujitsu") (collectively, "the Texas Defendants"). The Texas Defendants include Finisar
customers to whom Finisar owes indemnification obligations to. Cameron Decl. ¶ 5.
Additionally, the Texas Defendants have filed motions to transfer their respective actions to this
District, and both motions are still pending.

Capella did not name Finisar as a defendant in the Texas Actions, and the deadlines to
add Finisar as a defendant in those cases have recently passed. However, Capella alleges in its
Disclosure of Asserted Claims and Infringement Contentions that products of the Texas
Defendants incorporating Finisar's WSS products infringe the '905 Patent and '906 Patent.

For example, in the **Infinera** action, Capella alleges that "███████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
█████████████" Ex. 1, Infinera Infringement Contentions at 9. Capella further alleges that
the accused Infinera systems or platforms "████████████████████████████████
█████████" *Id.* at 101. Capella's infringement contentions in the Infinera action map each of the
claim elements on the WSS switching modules:

- "████████████████████████████████████████████
██████████████████████████████████" *Id.*
- "████████████████████████████████████████████

MEMORANDUM OF POINTS AND AUTHORITIES I/S/O PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

1  ██████████████████████████████████████" *Id.* at 102.

2      • "██████████████████████████████████████████████" *Id.*

3  With respect to the claimed "beam-deflecting elements" and "spatial array of channel

4  micromirrors" limitations, Capella's infringement contentions in the Infinera action read these

5  limitations on ████████████████████████. *Id.* at 102-103 ("████████

6  ████████████████████████████████████████████████████████

7  ████████████████████████████████████████████████████████

8  ██████████████████████████████████████████"); 222-223 (same).

9      Similarly, in the **Fujitsu** action, Capella alleges that the accused systems and platforms

10  use a "ROADM architecture" and that the "ROADM functionality is delivered using Wavelength

11  Selective Switch (WSS)." Ex. 2, Fujitsu Infringement Contentions at 2. Capella further alleges

12  that "Fujitsu makes, uses, sells, imports, and/or offers to sell optical transport systems or

13  platforms . . . comprised of . . . ROADMs . . ., the most common node structure of mesh

14  networks, and other products that incorporate wavelength selective switches ("WSSs"), each of

15  which is a wavelength separating-routing apparatus." *Id.* at 9.

16      Capella additionally alleges that the accused Fujitsu systems and platforms "include

17  ROADMs with one or more WSS switching modules." *Id.* at 72. Capella's infringement

18  contentions in the Fujitsu action map each of the claim elements on the WSS switching modules:

19      • "The switching modules include multiple fiber collimators, providing an input

20          port for an input multi-wavelength optical signal having first spectral channels and

21          fiber collimator one or more other ports for second spectral channels." *Id.* at 72.

22      • "The switching modules include a wavelength-selective device for spatially

23          separating the spectral channels." *Id.* at 73.

24      • "The switching modules include LCoS and MEMs beam deflecting elements." *Id.*

25          at 74.

26      Notably, Capella's infringement contentions allege that the accused "LCoS-based

27  switching module," i.e. an LCOS WSS, infringe the '905 Patent and '906 Patent because the

28  "LCoS-based switching module use a matrix of phase controlled pixels to create a spatial array of

MEMORANDUM OF POINTS AND AUTHORITIES I/S/O PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

1    channel micromirrors," even for claim elements that do not on their face require "channel

2    micromirrors." *See* Ex. 1, Infinera Infringement Contentions at 102, 222; Ex. 2, Fujitsu

3    Infringement Contentions at 74. Finisar does not supply MEMs WSSs to Infinera and Fujitsu.

4    Cameron Decl. ¶ 4.

5         **E.**    **The Recent *Cisco v. Capella* Case**

6        On March 16, 2020, Cisco Systems, Inc. filed suit against Capella in this District, seeking

7    a declaratory judgment of non-infringement with respect to the '905 and '906 Patents. *Cisco*

8    *Systems, Inc. v. Capella Photonics, Inc.*, Case No. 3:20-cv-01858-EMC. That action has been

9    designated related to the current action. Dkt. No. 24. The Court in the Cisco/Capella action has

10    scheduled a claim construction hearing for April 5, 2021 and Finisar will work to get on the claim

11    construction schedule in that action so there will be no need to delay that hearing. Additionally,

12    on August 21, 2020, the Court issued an order granting Cisco's motion for judgment on the

13    pleadings and ordered that "Capella may not seek pre-issue damages in [the Cisco/Capella

14    action]." *Cisco Systems, Inc. v. Capella Photonics, Inc.*, Case No. 3:20-cv-01858-EMC, Dkt. No.

15    48.

16         **F.**    **The Four Prior Capella Cases Before This Court**

17        Between 2014 and 2019 Capella litigated four prior cases before this Court involving the

18    same patented technology: (1) *Capella Photonics, Inc. v. Cisco Systems, Inc,* Case No. 14-cv-

19    03348-EMC; (2) *Capella Photonics, Inc. v. Fujitsu Network Communications, Inc.*, Case No. 14-

20    cv-03349-EMC; (3) *Capella Photonics, Inc. v. Tellabs, Inc.*, Case No. 14-cv-03350-EMC; and

21    (4) *Capella Photonics, Inc. v. Ciena Corporation,* Case No. 14-cv-03351-EMC. Each of these

22    cases asserted infringement of the same patents being asserted herein (although they were

23    subsequently "reissued" by the U.S. Patent & Trademark Office). Over the several years of

24    litigation (both prior and subsequent to the March 2015 stays pending IPRs), the actions were

25    heavily litigated by the parties. The Court also ruled on significant disputes concerning, *inter*

26    *alia*, the defendants' inequitable conduct defenses and the effect of the successful IPRs on

27    Capella's ability to continue prosecuting its claims.

28

MEMORANDUM OF POINTS AND AUTHORITIES I/S/O PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

## VI.    LEGAL STANDARD

Federal Circuit law applies to requests for "injunctions arbitrating between co-pending patent declaratory judgment and infringement cases in different district courts." *Lab. Corp. of Am. Holdings v. Chiron Corp.*, 384 F.3d 1326, 1331 (Fed. Cir. 2004).  The traditional four-factor test for a preliminary injunction "does not apply to the different question of whether to enjoin the prosecution of concurrent litigation." *Katz*, 909 F.2d at 1463.  "Instead, a primary question is whether the issues and parties are such that the disposition of one case would be dispositive of the other." *Id.*  In the context of an injunction sought by a manufacturer to enjoin a patentee from prosecuting claims against its customers in another forum, the root of the inquiry is whether the customer-suit exception to the first-to-file rule should apply. *See Katz*, 909 F.2d at 1464.  If the customer-suit exception applies, then it is "within the court's discretionary authority" to enjoin prosecution of the claims against the manufacturer's customers. *Id.*

"When a patent owner files an infringement suit against a manufacturer's customer and the manufacturer then files an action of noninfringement or patent invalidity, the suit by the manufacturer generally take precedence" under the customer-suit exception. *In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014).  It exists "to avoid, if possible, imposing the burdens of trial on the customer." *Id.*  "[T]he guiding principles in the customer suit exception cases are efficiency and judicial economy." *Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Tex. Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006).  Enjoining the patentee's claims against the manufacturer's customer or staying the customer suit "facilitate[s] [a] just, convenient, efficient, and less expensive determination," and does not burden the customer with unnecessary litigation. *Nintendo*, 756 F.3d at 1365.  For the exception to apply, the manufacturer's case must have "the potential to resolve the 'major issues' concerning the claims against the customer," but need not resolve "every issue." *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1358 (Fed. Cir. 2011) (internal quotations omitted).

## VII.    ARGUMENT

### A.    Under *Katz*, Capella should be enjoined from prosecuting claims against Finisar's customers

10

MEMORANDUM OF POINTS AND AUTHORITIES I/S/O PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

1    As the Federal Circuit explained in *Katz*, "[t]he premise behind a decision to enjoin

2 concurrent proceedings in another federal district court is that the proceedings involve the same

3 parties and issues." *Katz*, 909 F.2d at 1463. That is precisely the case here.

4    In *Katz*, the patentee filed an infringement suit against customers of Smith & Wesson in

5 the Western District of New York, and subsequently Smith & Wesson sought a declaratory

6 judgment in the Western District of Massachusetts and also moved for an injunction of the

7 patentee's claims against its customers in the W.D.N.Y. action. *Id.* at 1462. The Federal Circuit

8 upheld the district court's injunction based on the customer-suit exception, despite the fact that

9 there were other issues pending in the customer suit that would not be resolved by Smith &

10 Wesson's declaratory judgment action. *Id.* at 1464. In so doing, the Federal Circuit held that the

11 major issues of non-infringement and invalidity of the patents that were common between the

12 two lawsuits would be globally resolved for Smith & Wesson's customers in the manufacturer's

13 suit. *Id.* at 1464. Thus, "the disposition of one case would be dispositive of the other." *Id.* at

14 1462-63.

15    Critically, the Federal Circuit based its decision on the application of the customer-suit

16 exception, which acknowledges that the manufacturer or suppliers are the "true" defendants with

17 the greatest incentive and ability to zealously defend their own technology:

18    At the root of the preference for a manufacturer's declaratory judgment
19    action is the recognition that, in reality, the manufacturer is the true
     defendant in the customer suit . . . it is a simple fact of life that a
20    manufacturer must protect its customers, either as a matter of contract, or
     good business, or in order to avoid the damaging impact of an adverse ruling
21    against its products.

22 *Katz*, 909 F.2d at 1464. As a corollary, a customer that did not have final responsibility for

23 designing, developing, or manufacturing a component of its ultimate product would have less

24 incentive to vigorously defend the component against patent suits, particularly if the component

25 is interchangeable and could be replaced with a competitor's product that is not entangled in a

26 patent dispute. *Delphi Corp. v. Automotive Techs. Int'l, Inc.*, No. 08-CV-11048, 2008 WL

27 2941116, at *4 (E.D. Mich. Nov. 25, 2008).

28    A manufacturer's declaratory judgment action is also favored because it can significantly

11

MEMORANDUM OF POINTS AND AUTHORITIES I/S/O PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

1   streamline and possibly render moot the legal issues in related customer suits. *See Katz*, 909 F.2d

2   at 1464 ("Although there may be additional issues . . . [in the customer suits], their prosecution

3   will be advanced if [the plaintiff] is successful on the major premises being litigated in [the

4   primary infringement suit], and may well be mooted if he is unsuccessful.").

5       The rule is so well-settled that the Federal Circuit has twice ordered the extraordinary ***writ***

6   ***of mandamus*** compelling a stay of customer suits in favor of declaratory judgment suits brought

7   by upstream suppliers. *In re Google Inc.*, 588 F. App'x 988 (Fed. Cir. 2014); *In re Nintendo of*

8   *Am., Inc.*, 756 F.3d 1363.

9       In *In re Google*, patent holders Rockstar Consortium U.S. LP and Mobilestar

10  Technologies, LLC (collectively, "Rockstar") sued a number of mobile phone manufacturers in

11  the Eastern District of Texas, alleging patent infringement based on the use by Google customers

12  of Google's Android operating system. 588 F. App'x at 989. Subsequently, Google filed a

13  complaint in the Northern District of California seeking a declaratory judgment of non-

14  infringement so that it could remove any cloud of uncertainty over its operating system and its

15  own branded mobile phones. *Id.* Rockstar responded by amending its complaints in Texas to

16  add Google as a defendant to the customer cases and moving to dismiss or transfer the California

17  action. *Id.* The California district court denied that motion because Rockstar's allegations

18  targeted Google's Android operating system. *See id.*

19      Google and the phone manufacturers then moved to stay the customer suits in the Eastern

20  District of Texas, which that court denied. *Id.* at 989–90. The Federal Circuit, however, issued a

21  writ of mandamus directing the Eastern District of Texas to stay the customer suits, citing the

22  "clear" inefficiency of having parallel proceedings involving the same patents and accused

23  products:

24          Given these facts, it is clear that there was no need to proceed with the five
            Texas actions because the one California action may suffice. Such

25          circumstances present a classic case for a stay: The only potential results of
            adjudicating these cases in parallel fashion would be the Texas and

26          California courts agree on the major issues of the litigation, thus producing
            wasteful and unnecessary litigation, or the courts disagree, thus producing

27          conflicting decisions.

28

MEMORANDUM OF POINTS AND AUTHORITIES I/S/O PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

*Id.* at 990.  The Federal Circuit found that even though the customers allegedly modified the accused operating system, the cases substantially overlapped, and "staying proceedings in Texas w[ould] likely further the[] objectives [of saving litigation resources] by mooting or at least advancing the 'major premises' being litigated in the Texas actions."  *Id.* at 991 (quoting *Katz*, 909 F.3d at 1464).  The Federal Circuit held that the Texas district court's refusal to stay the customer suits was "a clear abuse of discretion" because it "frustrate[d] the comity doctrine, requiring two federal district courts and the parties to expend resources to resolve substantially similar claims and issues."  *Id.* at 991–92.

The Federal Circuit issued a similar mandate in *In re Nintendo of America, Inc.*  There, Secure Axcess LLC sued retailers of Nintendo's video game systems for patent infringement. 756 F.3d at 1365.  The district court denied a motion brought by Nintendo and its retailers to sever and stay claims against the retailer defendants and to allow Nintendo to defend its video game system against Secure Axcess's infringement claims in another court.  In response to Nintendo's petition for a writ of mandamus, the Federal Circuit vacated the district court's denial and directed the district court to grant the motion.  In so doing, the Federal Circuit noted that "Nintendo's liability is predicate to recovery from any of the defendants, [and thus] the case against Nintendo must proceed first, in any forum."  *Id.* at 1366.

As the Federal Circuit and courts around the country have recognized,[4] the customer-suit exception justifies suspending the earlier-filed claims against customers so that those claims can be adjudicated more fully in the later-filed manufacturer suit.  Such a suspension can be put in place by a stay entered in the earlier-filed case or by an injunction of the earlier-filed claims entered in the later-filed manufacturer's suit.  *See Kahn v. General Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989).  In fact, the Federal Circuit has held that "[t]here is no functional

---

[4] *See, e.g., Grecia v. Target Corp.*, No. 17-CV-00323-YGR, 2018 WL 4283358, at *2 (N.D. Cal. Sept. 7, 2018 ) ("MasterCard, as the provider of the allegedly infringing payment system at issue in this case, is in the best position to litigate against Grecia's infringement claims because it has access to all of the relevant technical and proprietary information relevant to the infringement question."); *CyWee Grp. Ltd. v. Huawei Device Co.*, No. 17-cv-00495, 2018 WL 4002776, at *16-18 (E.D. Tex. Aug. 22, 2018); *IWP Banquet, LLC v. Target Corp.*, No. 16–02082, 2016 WL 9450448, *5-6 (C.D. Cal. Dec. 15, 2016); *Capital Sec. Systems, Inc. v. ABNB Federal Credit Union*, No. 2:14-cv-265, 2014 WL 5334270, *3-*5 (E.D. Va. Oct. 20, 2014).

MEMORANDUM OF POINTS AND AUTHORITIES I/S/O PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

_

1   distinction between a stay of the first-filed suit and an injunction against prosecution of the first-

2   filed suit," *id*, and as discussed *infra*, such an injunction is warranted here.

3           1.       **The customer suit exception applies to this case**

4         The rationale of the customer suit exception applies here, just like it did in Finisar's prior

5   declaratory judgment suit against a patentee who rather than suing Finisar directly over

6   infringement allegations directed to Finisar's WSSs, sued Finisar's customers in the Eastern

7   District of Texas. This is because Finisar's WSSs are the operative accused products in the

8   Texas Actions, making Finisar the manufacturer and the Texas Defendants the customers.

9         As discussed above, Capella's infringement contentions plainly show that its infringement

10   allegations are directed to the WSSs in the accused ROADMs. *See supra* Section V.D. Indeed,

11   the figures of the '905 Patent and '906 Patent are focused on the disclosed "wavelength

12   separating routing apparatus." *See, e.g.* Ex. 3, '905 Patent, Fig. 1A; Ex. 4, '906 Patent, Fig. 1A.

13   For each claim limitation, Capella directs its infringement allegations to the "WSS switching

14   modules." *See* Ex. 1, Infinera Infringement Contentions at 101; Ex. 2, Fujitsu Infringement

15   Contentions at 74. Thus, the infringement allegations against ROADMs sold by Finisar's

16   customers containing Finisar WSSs are in fact really infringement allegations against Finisar

17   WSSs. *See U.S. Ethernet Innovations, LLC v. AT&T Mobility, Inc.*, No. 10-cv-5254-CW, 2014

18   U.S. Dist. LEXIS 108684, at *9 (N.D. Cal. Aug. 6, 2014) (staying claims against accused set-top

19   boxes while allowing claims against accused chips to go forward, where the patentee's claims

20   against the set-top box manufacturer and the chip supplier were "identical" and where the

21   patentee's expert never described the set-top box accused products "as infringing independently

22   from their integration of the accused . . . chips").

23         In 2011, Cheetah Omni, LLC sued Finisar's customers in the Eastern District of Texas,

24   accusing those customers of patent infringement based on their sale of ROADMs incorporating

25   Finisar's WSSs. *See Finisar Corp. v. Cheetah Omni, LLC*, No. 11-cv-15625, 2012 WL

26   12931575, at *1-2 (E.D. Mich. Nov. 12, 2012). After Cheetah filed its action in the Eastern

27   District of Texas against a number of Finisar customers, Finisar filed a single complaint for

28   declaratory judgment of non-infringement and invalidity in the Eastern District of Michigan and

14

MEMORANDUM OF POINTS AND AUTHORITIES I/S/O PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

1   then filed a motion seeking to enjoin Cheetah from prosecuting its claims against Finisar's

2   customers in the Eastern District of Texas. *Id.* at *1. Cheetah responded by filing a motion for

3   an order declining declaratory judgment jurisdiction, which the court ruled on first. *See Finisar*

4   *Corp. v. Cheetah Omni, LLC*, No. 11-cv-15625, 2012 WL 12931574 (E.D. Mich. July 5, 2012).

5   In that order, the court found that Finisar had standing to bring its suit under the customer-suit

6   exception. *Id.* at *3. In granting Finisar's motion to enjoin Cheetah's claims in the Eastern

7   District of Texas,[5] the court found that Finisar was "the manufacturer of the primary device

8   accused of infringing" the patents in the Eastern District of Texas action. *Id.* at *5. The court

9   rejected Cheetah's argument that an injunction was inappropriate because there were other

10  (unrelated) patents asserted in the Eastern District of Texas action against Finisar's customers'

11  ROADMs that did not contain Finisar WSSs. *Id.* at *6. Instead, the court found because the

12  "instant case will resolve all of the claims involving [Finisar's] customers, to the extent that those

13  claims are based on [Finisar's] allegedly infringing products," an injunction was appropriate. *Id.*

14        Like Finisar's prior declaratory judgment case against Cheetah, Finisar's current

15  declaratory judgment case was filed in response to Capella's filing of multiple suits against

16  Finisar's customers in the Eastern District of Texas based on the alleged infringement of Finisar's

17  WSS products. *See supra* Section V.D; *Finisar*, 2012 WL 12931575 at *1-2. And like Cheetah's

18  Eastern District of Texas suit against Finisar's customers, Capella's suit against Finisar's

19  customers is also directed to ROADMs sold by Finisar's customers that contain Finisar WSSs

20  and ROADMs sold by Finisar's customers that contain WSSs manufactured by other

21  manufacturers. *See supra* Section V.D; *Finisar*, 2012 WL 12931575 at *6. Finally, just as the

22  court in *Finisar v. Cheetah* found that it was Finisar who was the "manufacturer of the primary

23  device accused of infring[ement]," so too are Finisar's WSSs the primary device accused of

24  infringement in the Texas Actions. *See supra* Section V.D; *Finisar*, 2012 WL 12931575 at *5.

25

26  _____

    [5] The court in *Finisar v. Cheetah* applied the traditional four-factor test for an injunction, rather

27  than the Federal Circuit's more lenient standard in *Katz*, finding that the Supreme Court's *eBay*
    decision had overruled *Katz*. *See Finisar*, 2012 WL 12931575 at *3. As discussed *infra*, that is

28  not the applicable test, but in any event, the facts here support an injunction under that test as
    well.

MEMORANDUM OF POINTS AND AUTHORITIES I/S/O PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

### 2. An injunction of Capella's claims against Finisar's customers relating to Finisar's products is warranted

As discussed above, because Finisar is the manufacturer of the accused switching technology, it is in the best position to defend the technology because as the manufacturer, it understands the technology and controls their design and production. Indeed, the "preference for a manufacturer's declaratory judgment action" over a customer suit is rooted in the indemnification obligations Finisar owes to its customers Infinera and Fujitsu—whereby Finisar "must protect its customers"—because, "in reality, the manufacturer is the true defendant." *Katz*, 909 F.2d at 1464. This action will globally resolve the dispute with respect to Finisar and Capella, and an injunction is warranted even though Capella's claims against Finisar's customers with respect to other ROADMs using non-Finisar WSSs will proceed. *See Katz*, 909 F.2d at 1464; *see also Spread Spectrum Screening*, 657 F.3d at 1358; *ProBatter Sports, LLC v. Joyner Techs., Inc.*, 463 F. Supp. 2d 949, 956 (N.D. Iowa 2006) ("Although there may be additional issues involving the defendants in the Customer Lawsuits, as ProBatter alleges, the resolution of the Iowa Lawsuit will nonetheless significantly advance the prosecution or resolution of the Customer Lawsuits.").

Additionally, the "guiding principles in the customer suit exception cases" of "efficiency and judicial economy," *Tegic*, 458 F.3d at 1343, support an injunction here. As explained above, there are multiple types of WSSs accused of infringement: LCOS WSSs (sold by Finisar) and MEMS WSSs (not sold by Finisar). LCOS and MEMS WSSs operate using fundamentally different technology and as such, issues of infringement and claim construction are unique to the accused each type of technology. *See supra* Section V.B. Finisar should not be forced to rely on its customers—who purchase both types of WSSs from various suppliers, including from Finisar's competitors—to formulate arguments that would favor Finisar's WSSs, when it might be in the Texas Defendants' best interests to formulate arguments that favor other accused WSSs. This is especially the case with the Patents-in-Suit, which are plainly directed to MEMS-based

MEMORANDUM OF POINTS AND AUTHORITIES I/S/O PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

1    WSSs, and where the assertion of them against LCOS-based WSSs is objectively baseless.[6]  *See*

2    *supra* Section V.B, C.  For that same reason, requiring Finisar to intervene in both the *Infinera*

3    and *Fujitsu* actions would lead to wasteful and unnecessary litigation and would still not

4    guarantee Finisar the best ability to defend itself because Capella has accused WSSs

5    manufactured by different companies of infringement, and Finisar's customers are no more likely

6    to agree with Finisar's litigation positions just because Finisar has intervened in the actions.

7    Finisar should not be deprived of its full and fair opportunity to vindicate its products globally

8    because of Capella's apparent end-around of the Patent Act's joinder provisions[7] and its blatant

9    forum shopping.

10          And, because Finisar's WSSs are implicated in both the *Infinera* and *Fujitsu* actions, it

11   makes sense from an efficiency standpoint to address the issue of Finisar's alleged infringement

12   of the Patents-in-Suit in one action, rather than two.  *See In re Google*, 588 App'x at 991-92.[8]

13          Furthermore, because of the co-pending declaratory judgment action brought by Cisco

14   against Capella, which this action has been found related to under L.R. 3-12, Dkt. No. 24, this

15   Court will, in any event, take up the issues of claim construction, infringement, and damages with

16   respect to the Patents-in-Suit whether Finisar had filed this suit or not.  Indeed, Finisar is willing

17   to work with the Court and the parties in the *Cisco* action to quickly catch up to the claim

18   construction schedule in that case to increase the efficiencies of presenting issues in this Court.

19   Moreover – the Court has already determined in the *Cisco* action that Capella is barred from

20

21   _____

22   [6] For example, every asserted claim of Capella's patents require the use of either "micromirrors"
     or "two-dimensional" motions for controlling beam steering, neither of which are present in
     Finisar's accused switches.

23   [7] 35 U.S.C. § 299 "adds a requirement that the transaction or occurrence [forming the basis of the

24   suit] must relate to making, using, or selling of the same accused product or process."  *In re
     Nintendo Co.*, 544 F. App'x 934, 939 (Fed. Cir. 2013).  Allowing Capella to maintain claims on

25   unrelated products in the same action simply because it (improperly) sued a customer instead of
     the manufacturers would defeat Congress's express preference in the AIA that patentees should

26   file such claims as separate actions.

27   [8] That the Texas Defendants may have additional suppliers of LCOS WSSs in no way diminishes
     the efficiencies gained here by globally addressing the dispute between Finisar and Capella in

28   one action and is yet another reason to enjoin Capella's claims in the Texas Actions because it
     would further simplify the issues before that court.

17

MEMORANDUM OF POINTS AND AUTHORITIES I/S/O PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

seeking pre-issue damages with respect to the Patents-in-Suit. *See Cisco Systems, Inc. v. Capella Photonics, Inc.*, Case No. 20-cv-01858-EMC, Dkt. No. 48. However, the issue of pre-issuance damages has not yet been presented in the Texas Actions, but Finisar expects to seek similar relief in this action where only its products are at issue and wants to avoid inconsistent judgments.

Additionally, the presiding judge in the *Capella v. Ciena* action in the District of Maryland granted Ciena's motion to transfer that case to this District on December 1, 2020, finding that the interest of justice weighed heavily in favor of transfer because of the "similarities between [the *Ciena* action] and the currently pending actions in the Northern District of California, as well as the similarities between this action and the now-concluded action before Judge Chen in that District." *See* Ex. 5 at 12.[9] Therefore, three of the five pending suits involving Capella's '905 and '906 Patents will be heard in this District. Thus, the customer-suit exception clearly applies to the facts at hand, and the Court should exercise its discretion and enjoin Capella from prosecuting its claims against the Texas Defendants as they relate to Finisar's WSS products. *Katz*, 909 F.2d at 1464; *ProBatter*, 463 F. Supp. 2d at 956 ("Although the court does not read Katz to require the issuance of an injunction, . . . the court finds that the same reasons that guided the district court in *Katz* to issue an antisuit injunction warrant enjoining ProBatter from prosecuting the Customer Lawsuits until final disposition of the Iowa Lawsuit.").

**B.      Even under the traditional injunction standard, Capella's claims against Finisar's customers should be enjoined**

As discussed above, the standard for granting an injunction in a customer suit exception context is not the traditional injunction standard requiring a showing of irreparable harm and a

---

[9] Based on the complaint in the *Ciena* action, which was also filed in March 2020 at the time of the Texas Actions, it is not clear that Finisar's WSSs are implicated. However, that case is several months behind the two Texas actions and Capella has not yet served infringement contentions. If those contentions are similar to the contentions in the two Texas actions, Finisar expects to be in a similar position with respect to Ciena. To date, Finisar has not received an indemnification request with respect to that action from Ciena.

MEMORANDUM OF POINTS AND AUTHORITIES I/S/O PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

1   likelihood of success on the merits.  *Id.* at 1462-63.  Indeed, 9th Circuit law in the non-patent

2   context with respect to foreign anti-suit injunctions supports applying the *Katz* standard to

3   Finisar's request for an injunction because it uses the same inquiry and not the traditional

4   injunction standard.  *See Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 882 (9th Cir. 2012)

5   ("The threshold consideration for a foreign anti-suit injunction is 'whether or not the parties and

6   the issues are the same' in both the domestic and foreign actions, 'and whether or not the first

7   action is dispositive of the action to be enjoined.'"); *cf. Karaha Bodas Co., L.L.C. v. Perusahaan*

8   *Pertambangan Minyak Dan Gas Bumi Negara*, 500 F.3d 111, 119 (2d Cir. 2007)   ("[A]n anti-

9   suit injunction against foreign litigation may be imposed only if two threshold requirements are

10  met: (A) the parties are the same in both matters, and (B) resolution of the case before the

11  enjoining court is dispositive of the action to be enjoined.").

12          However, even under the traditional standard for an injunction in patent cases, Capella

13  should still be enjoined from prosecuting its claims against Finisar's customers in the Texas

14  Actions.  Indeed, as noted above, this was the test applied in *Finisar v. Cheetah* and the court

15  granted the injunction nonetheless (on facts that were arguably more favorable to the patentee).

16  There the court found that the **first** factor, whether Finisar will suffer irreparable harm absent an

17  injunction, weighs in favor of an injunction because Finisar is now obligated to indemnify its

18  customers in the Texas Actions.  *See Finisar*, 2012 WL 12931575 at *4 ("Plaintiff has

19  demonstrated that it has suffered irreparable injury by being forced to indemnify its customers in

20  the Texas action").

21          The **second** factor, whether the remedies available at law are inadequate to compensate

22  for its injury, also weighs in favor of an injunction because the indemnification obligations could

23  potentially damage Finisar's relationships with its customers.  *Id.* ("Plaintiff has also

24  demonstrated that the remedies available at law are inadequate to compensate for its injury,

25  because a confrontation with its customers regarding the extent of indemnity is likely to strain

26  Plaintiff's relationships with its customers, potentially damaging Plaintiff's good will, reputation,

27  and future business opportunities within the industry.").

28          The **third** factor, whether the balance of hardships favors the equitable remedy of an

19

MEMORANDUM OF POINTS AND AUTHORITIES I/S/O PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION

injunction, weighs in favor of an injunction based on the application of the customer-suit

exception discussed above.  *Id.* at *5 (holding that Finisar's suit for declaratory judgment "takes

precedence over the Texas action against Plaintiff's customers" and that Finisar was the

"manufacturer of the primary device accused of" infringement).

Finally, the **fourth** factor, whether the public interest is served by a permanent injunction,

weighs in favor of an injunction because "[t]he public interest in determining the rights of

intellectual property rights holders is not impeded" if Capella is enjoined from prosecuting its

claims against Finisar's customers in the Texas Actions because "those same claims will be fully

adjudicated in this Court."  *Id.* at *6.

## VIII.  <u>CONCLUSION</u>

For the foregoing reasons, the Court should enjoin Capella from prosecuting its claims

against Finisar's customers with respect to the accused Finisar WSSs.


Dated:  December 10, 2020                              Respectfully Submitted,


                                                      */s/David C. Radulescu*
                                                      DAVID C. RADULESCU, Ph.D. (*pro hac vice*)
                                                      david@radip.com
                                                      ETAI LAHAV (*pro hac vice*)
                                                      etai@radip.com
                                                      JONATHAN AUERBACH (*pro hac vice*)
                                                      jonathan@radip.com
                                                      **RADULESCU LLP**
                                                      5 Penn Plaza, 19th Floor
                                                      New York, NY 10001
                                                      Telephone: (646) 502-5950
                                                      Facsimile: (646) 502-5959

                                                      Cheryl S. Chang (SBN 237098)
                                                      **BLANK ROME LLP**
                                                      Chang@BlankRome.com
                                                      2029 Century Park East, 6th Floor
                                                      Los Angeles, CA 90067
                                                      Telephone: (424) 239-3400
                                                      Facsimile: (424) 239-3434

                                                      ***Attorneys for Plaintiff***
                                                      **Finisar Corp.**

MEMORANDUM OF POINTS AND AUTHORITIES I/S/O PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION