UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FINISAR CORPORATION,<br><br>    Plaintiff,<br><br>    v.<br><br>CAPELLA PHOTONICS, INC.,<br><br>    Defendant. | Case No. 20-cv-07629-EMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS, AND DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Docket Nos. 28-29 |

    Plaintiff Finisar Corporation ("Finisar") filed a complaint seeking a declaratory judgment that Finisar and its customers—Tellabs, Inc. ("Tellabs"), Infinera Corp. ("Infinera"), Infinera America, Inc. ("Infinera America"), Infinera Optical Networks, Inc. ("Infinera Optical"), Coriant (USA), Inc. ("Coriant"), and Fujitsu Network Communications, Inc. ("Fujitsu") (collectively, the "Texas Defendants")—have not infringed two of Defendant Capella Photonics, Inc.'s ("Capella") patents—U.S. Patent No. RE 47,905 (the "'905 Patent") and U.S. Patent No. RE 47,906 (the "'906 Patent") (collectively, the "Patents-in-Suit")—and that Capella is not entitled to pre-issuance damages for these patents. *See* Docket No. 1 ("Compl."). Finisar alleges its products, and the incorporation of its products by its customers, do not infringe either patent. *Id.*

    Pending before the Court are (1) Finisar's motion for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65; and (2) Capella's motion to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), or in the alternative, obtain a more definite statement under Federal Rule of Civil Procedure 12(e). For the following reasons, Capella's Rule

1   12(b)(1) motion to dismiss is **GRANTED**.[1]  All other motions are **DENIED**.

## I.   BACKGROUND

Finisar alleges as follows in the complaint.  Finisar is a provider of optical subsystems and components that are used to interconnect equipment to various networks.  *See* Compl. ¶ 10.  Finisar's products include a Wavelength Selective Switch (WSS) that is based on Liquid Crystal on Silicon (LCoS) technology.  *Id.*  Finisar's WSS products use the Dynamic Wavelength Processor (DWP) platform, the Edge Wavelength Processor (EWP) platform, the Single Low Profile (SLP) platform, or the Dual platform.  *Id.* ¶¶ 11-12.  All of these products are sold to Finisar's customers, including the Texas Defendants.  *Id.* ¶ 12.  Capella owns the Patents-in-Suit.  *See id.* ¶ 13.

A.   Prior Litigation and Patent History

On February 12, 2014, Capella filed four lawsuits in the U.S. District Court for the Southern District of Florida against Cisco Systems, Inc. ("Cisco"), Ciena Corp. ("Ciena"), Tellabs, and Fujitsu (collectively, the "Old Defendants"), alleging they infringed U.S. Patent Nos. RE 42,678 (the "'678 Patent") and RE 42,368 (the "'368 Patent") (collectively, the "Old Patents") because they made and sold Reconfigurable Optical Add Drop Multiplexer ("ROADM") products.  *See* Compl. ¶ 14; *see also Capella Photonics, Inc. v. Cisco Systems, Inc.*, Case No. 1:14-cv-20529-PAS (S.D. Fla. Feb. 12, 2014); *Capella Photonics, Inc. v. Ciena Corporation*, Case No. 1:14-cv-20530-PAS (S.D. Fla. Feb. 12, 2014); *Capella Photonics, Inc. v. Tellabs, Inc.*, Case No. 0:14-cv-60350-PAS (S.D. Fla. Feb. 12, 2014); *Capella Photonics, Inc. v. Fujitsu Network Communications, Inc.*, 14-cv-20531-PAS (S.D. Fla. Feb. 12, 2014).  All four of these lawsuits were transferred to this District in July of 2014.  *See* Compl. ¶ 14; *see also Capella Photonics, Inc. v. Cisco Systems, Inc.*, Case No. 3:14-cv-03348-EMC, Docket No. 78; *Capella Photonics, Inc. v. Ciena Corporation,* Case No. 3:14-cv-03351-EMC, Docket No. 88; *Capella Photonics, Inc. v. Tellabs, Inc.*, Case No. 3:14-cv-03350-EMC, Docket No. 76; *Capella Photonics, Inc. v. Fujitsu Network Communications, Inc.*, Case No. 3:14-cv-03349-EMC, Docket No. 66.

---

[1] The Court need not address Capella's alternative motions to dismiss under Rule 12(b)(6) or to obtain a more definite statement under Rule 12(e).

1    As alleged by Finisar, the Old Defendants instituted *inter partes* review (IPR) proceedings
2    challenging several of the Old Patents' claims. *See* Compl. ¶¶ 15, 25. The Patent Trial and
3    Appeal Board (PTAB) found invalid claims 1-6, 9-13, and 15-22 of the '368 Patent and claims 1-
4    4, 9, 10, 13, 17, 19-23, 27, 29, 44-46, 53, and 61-65 of the '678 Patent. *Id.* The Federal Circuit
5    upheld the PTAB's decisions and Capella thereafter placed the Old Patents into reissue
6    proceedings, amending many of the underlying claims. *Id.* ¶¶ 16-17, 26-27.[2] The U.S. Patent and
7    Trademark Office (PTO) issued a Notice of Allowance, and the modified '368 and '678 Patents
8    were reissued as the '905 and '906 Patents on March 17, 2020. *Id.* ¶¶ 18, 28. Finisar contends
9    that during the reissue proceedings, Capella represented that the claims of the Patents-in-Suit have
10   the same scope as the claims of the Old Patents. *Id.* ¶¶ 21-22, 31-32.

11   B.    The Current Litigation

12   Cisco sued Capella on March 16, 2020—the day before the Patents-in-Suit issued—
13   seeking a declaratory judgment that Cisco's products do not infringe the Patents-in-Suit. *Id.* ¶ 36;
14   *see Cisco Sys. v. Capella Photonics, Inc.*, No. 20-cv-01858-EMC, Docket No. 1. The Court
15   granted Cisco's motion for judgment on the pleadings, finding that the PTAB's invalidation of
16   several of the Old Patents' claims precluded Capella from recovering pre-issuance damages for
17   Cisco's alleged infringement of "substantially identical" claims in the Patents-in-Suit. *See Cisco*
18   *Sys. v. Capella Photonics, Inc.*, No. 20-cv-01858-EMC, 2020 WL 4923697, at *6–*7 (N.D. Cal.
19   Aug. 21, 2020) ("Order on Pre-issuance Damages"). Cisco's lawsuit is still pending before the
20   Court and the case has been related to the instant action. *See* Docket No. 24 ("Order Relating
21   Case").

22   On March 16 and 17, 2020, Capella sued the Texas Defendants (collectively, the "Texas
23   Actions"), alleging infringement of the Patents-in-Suit because their products incorporate
24   ROADM technology. *See* Compl. ¶¶ 37-38, 40, 44; *see also* Exhibits 1-2 to Compl.[3] Finisar sued

---

[2] Capella requested "input port" and "one or more other ports" be replaced with "fiber collimator input port" and "fiber collimator one or more other ports" for the '368 Patent, and requested "input port" and "output port" be replaced with "fiber collimator input port" and "fiber collimator output ports" for the '678 Patent. *See* Compl. ¶¶ 17, 27; *see also* Exhibit 8 to Compl.

[3] Capella also sued Ciena on March 17, 2020 in the U.S. District Court for the District of

3

1  Capella on October 29, 2020 seeking a declaratory judgment that Finisar, and third parties who
2  utilize Finisar products, have not and do not infringe the Patents-in-Suit and that Capella is not
3  entitled to pre-issuance damages. *See* Compl. ¶¶ A-I. Finisar alleges Capella's infringement
4  contentions in the Texas Actions "make clear that the actual accused products are not the
5  identified ROADM products, but the WSSs contained in those ROADM products," and that these
6  WSSs include Finisar's products. *See* Compl. ¶ 6. In other words, Capella's suits against the
7  Texas Defendants are suits against customers of the manufacturer of the accused product—Finisar.
8  Finisar thus contends this action should take priority over Capella's suits against the Texas
9  Defendants under the customer-suit exception to the first-to-file rule. *Id.*
10  On December 10, 2020, Finisar moved for a preliminary injunction under Rule 65, seeking
11  to stay the Texas Actions until resolution of the instant suit. *See* Docket No. 28 ("PI Mot.").
12  Capella moved to dismiss the complaint two weeks later under Rules 12(b)(1), 12(b)(6), or in the
13  alternative, obtain a more definite statement under Rule 12(e). *See* Docket No. 29 (MTD).
14  The Texas Defendants subsequently moved in the Eastern District of Texas to change
15  venue to this District and relate their cases to the instant action. That court denied both motions
16  on February 2 and 10, 2021, and issued its claim construction order construing the terms of the
17  Patents-in-Suit on February 9, 2021. *See Capella Photonics, Inc. v. Infinera Corporation et al.*,
18  Case No. 2:20-cv-00077, Docket Nos. 99, 100; *Capella Photonics, Inc. v. Fujitsu Network*
19  *Communications, Inc.*, Case No. 2:20-cv-00076, Docket Nos. 78, 81.

## II.     DISCUSSION

A.     Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction

   1.     Legal Standard

Federal courts have authority to hear a case only if there is an actual case or controversy. *Raines v. Byrd*, 521 U.S. 811, 818 (1997). "The threshold question for declaratory judgment jurisdiction is 'whether the facts alleged, under all the circumstances, show that there is a

---

Maryland, alleging Ciena infringed the Patents-in-Suit; the action has since been transferred to this District. *See Capella Photonics, Inc. v. Ciena Corp.*, No. 4:20-cv-08628-JSW (N.D. Cal.). Finisar does not allege Ciena is one of its customers.

4

substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 903 (Fed. Cir. 2014) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)). "A plaintiff seeking a declaratory judgment bears the burden of demonstrating that a case of actual controversy existed at the time the declaratory action was filed. That requires a showing of injury-in-fact, connection between the challenged conduct and the injury, and redressability by the requested remedy." *AIDS Healthcare Found., Inc. v. Gilead Scis., Inc.*, 890 F.3d 986, 990 (Fed. Cir. 2018).

Under Rule 12(b)(1), a party may move to dismiss for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). If subject matter jurisdiction is lacking, dismissal is required. *Maya v. Centex* Corp.*,* 658 F.3d 1060, 1067 (9th Cir. 2011). "[E]ven if there is an actual controversy and thus jurisdiction, the exercise of that jurisdiction rests within the sound discretion of the district court." *Fina Research, S.A. v. Baroid Ltd.*, 141 F.3d 1479, 1481 (Fed. Cir. 1998).

2. Analysis

Capella contends the Court lacks subject-matter jurisdiction over Finisar's claims because Finisar "fails to allege that it has made, used or sold its WSS products in the United States, or has imported the products into the United States, or otherwise done anything that could implicate U.S. patent laws." MTD at 11-12. This argument is unpersuasive. Finisar alleges that it sold WSS products to the Texas Defendants. *See* Compl. ¶¶ 12, 38. On a motion to dismiss, the Court must accept this allegation as true. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

Capella next argues there is no declaratory judgment jurisdiction because Finisar, as the declaratory judgment plaintiff, "failed to sufficiently allege an actual controversy." *See* MTD at 12-15.[4]

Finisar first contends it has properly alleged a live case or controversy because it purports to have "indemnification obligations to the Texas Defendants relating to Capella's claims in the

---

[4] Capella also argues that even if subject matter jurisdiction exists, the Court should dismiss the action pursuant to this first to file rule. *See* MTD at 15-17. The Court addresses the first-to-file rule *infra* Section II.B.

5

Texas Actions" thereby creating an "adverse legal interest with Capella." MTD Opp'n Mot. at 3-8; *Arris Grp., Inc. v. British Telecomms. PLC*, 639 F.3d 1368, 1375 (Fed. Cir. 2011) ("[W]here a patent holder accuses customers of direct infringement based on the sale or use of a supplier's equipment, the supplier has standing to commence a declaratory judgment action if [] the supplier is obligated to indemnify its customers from infringement liability.").

The existence of an indemnification obligation is subject to the pleading requirements of Rule 8, which require more than mere conclusory allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (complaint must provide sufficient allegations of underlying facts). Here, Finisar provided one wholly conclusory and insufficient statement from the Director of Marketing of its Australian subsidiary that reads, "Finisar has indemnification obligations to Tellabs, Infinera, Coriant, and Fujitsu with respect to the WSS products that it supplies to those customers." *See* PI Mot., Cameron Decl. Finisar does not specify the source of these alleged indemnification obligations. Nor does it describe the scope and nature of the indemnification obligations allegedly owed to its customers. Finisar has not attached any contract laying out the details of its alleged indemnification obligations. *Cf. Taco Bell Corp. v. TBWA Chiat/Day Inc.*, 552 F.3d 1137 (9th Cir. 2009) (indemnification obligations pursuant to a contractual agreement and contract was provided to the court); *APL Co. Pte v. UK Aerosols Ltd.*, 582 F.3d 947 (9th Cir. 2009) (indemnification obligations pursuant to bill of lading). The allegation is too conclusory to sate a plausible claim. *See Iqbal*, 556 U.S. at 678-79.

More importantly, Finisar's indemnification obligations to its customers, assuming *arguendo* they exist, would allow Finisar to sue in the Eastern District of Texas, not *this* Court. In *Microsoft*, the Federal Circuit explained that where a manufacturer has an obligation to indemnify its customers, it has to "stand in the shoes of the customers" in the district where the customers filed suit:

> Importantly, even if there were such an obligation—to indemnify a customer already sued by the patentee in Texas—it would not justify what Appellees seek here. A case has already been filed against these customers in the Eastern District of Texas. Appellees cannot seek a declaration from a New York court on behalf of customers they must indemnify where a suit against these very same customers on all the same issues was already underway in a Texas court. By

6

> agreeing to indemnify any one of their customers, Microsoft could defend its customers and efficiently and effectively participate ***in the Texas action.***

755 F.3d at 904 (emphasis added). Therefore, under *Microsoft*, if Finisar is required to indemnify the Texas Defendants, it has standing to defend them in the Texas Actions, not to file a declaratory judgment action here.

Second, Finisar contends that "Capella's suits against the Texas Defendants give rise to an actual controversy as to whether Finisar might be liable for direct infringement." *See* MTD Opp'n Mot. at 3-8. To the extent Finisar essentially is asserting it be subject to direct liability to Capella independent of any indemnification obligations owed to the Texas Defendants, it fails to establish a requisite concrete controversy. "[T]o establish an injury in fact traceable to the patentee, a declaratory judgment plaintiff must allege both (1) an affirmative act by the patentee related to the enforcement of his patent rights, and (2) meaningful preparation to conduct potentially infringing activity." *Ass'n for Molecular Pathology v. United States PTO*, 689 F.3d 1303, 1318 (Fed. Cir. 2012), *aff'd in part, rev'd in part on other grounds sub nom. Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576 (2013). An affirmative act requires more than "a communication from a patent owner to another party, merely identifying its patent and the other party's product line." *3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1378-79 (Fed. Cir. 2012) (quoting *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1362 (Fed. Cir. 2009)). Importantly, "jurisdiction generally will not arise merely on the basis that a party learns of the existence of a patent owned by another or even perceives such a patent to pose a risk of infringement, without some affirmative act by the patentee." *Asia Vital Components Co. v. Asetek Danmark A/S*, 837 F.3d 1249, 1253 (Fed. Cir. 2016) (quoting *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007)). There must be "conduct that can be reasonably inferred as demonstrating intent to enforce a patent." *Id.* (quoting *Hewlett-Packard*, 587 F.3d at 1363).

Here, Finisar fails to allege *any* affirmative act by Capella related to the enforcement of the Patents-in-Suit against it. Instead, Finisar relies solely on Capella's lawsuit against the Texas Defendants as the basis of an inference of injury. *See* Compl. ¶ 7; MTD Opp'n Mot. at 6-8. Such

7

1    reliance is insufficient. There is no communication from Capella indicating an intent to enforce
2    the patents against Finisar. *Cf. Ass'n for Molecular Pathology*, 689 F.3d 1303 (finding sufficient
3    affirmative acts where patentee sent the alleged infringer a letter demanding royalty payments);
4    *Hewlett-Packard*, 587 F.3d 1358 (finding sufficient affirmative acts where patentee sent two
5    letters to the alleged infringer, impliedly asserting its rights under the patents at issue); *Micron*
6    *Tech., Inc. v. MOSAID Techs., Inc.*, 518 F.3d 897 (Fed. Cir. 2008) (finding sufficient affirmative
7    acts where the patentee sent four letters to the alleged infringer suggesting a licensing agreement
8    be put in place). At oral argument Capella indicated that the Patents-in-Suit expire in September
9    2021 and that it does not intend to enforce them against Finisar. *See* Docket No. 60 ("Hearing
10   Tr.") at 18-19.

11   Thus, Finisar has not demonstrated a live case or controversy exists, "as distinguished from
12   an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune*, 549
13   U.S. at 127 (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)). Furthermore,
14   assuming *arguendo* jurisdiction existed, the Court declines to exercise it at this time. *See Fina*
15   *Research*, 141 F.3d at 1481.

16   Accordingly, the Court **GRANTS** Capella's Rule 12(b)(1) motion to dismiss for lack of
17   subject matter jurisdiction and **DISMISSES** Finisar's complaint with leave to amend. An
18   amended complaint should provide (a) sufficient factual allegations of the existence of
19   indemnification obligations, in which case, the Court will entertain a motion to transfer venue to
20   the Eastern District of Texas; or (b) point to some act by Capella—other than the Texas Actions—
21   indicative of an intent to enforce the Patents-in-Suit directly against Finisar.

22   B.    Plaintiff's Motion for Injunctive Relief

23   Finisar moves for a preliminary injunction, seeking to stay the Texas Actions until
24   resolution of this suit. *See* PI Mot. Finisar argues the customer-suit exception to the first-to-file
25   rule applies and that under Federal Circuit precedent, an injunction against Capella is warranted.
26   *Id.* at 10-17. In the alternative, Finisar argues an injunction is warranted under the traditional four-
27   factor test from *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). *Id.* at 18-20.
28   Because the Court dismisses Finisar's complaint for lack of subject matter jurisdiction, Finisar's

1  motion for a preliminary injunction is **DENIED** as moot.  Even if it had jurisdiction, Finisar

2  would not be entitled to a preliminary injunction.

### 1. The Customer-Suit Exception

The first-to-file rule allows a district court to stay or dismiss proceedings if a similar case with substantially similar issues and parties was previously filed in another district court.  *See Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1239 (9th Cir. 2015) (stay a proceeding); *Pacesetter Sys. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982) (dismiss a proceeding).  One purpose of the rule is to promote judicial efficiency.  *Church of Scientology v. United States Dep't of Army*, 611 F.2d 738, 750 (9th Cir. 1979), *overruled on other grounds by Animal Legal Def. Fund v. United States FDA*, 836 F.3d 987 (9th Cir. 2016) (en banc).  Another purpose is to "avoid placing an unnecessary burden on the federal judiciary, and to avoid the embarrassment of conflicting judgments."  *Id.*

"The general rule . . . is that 'as a principle of sound judicial administration, the first suit should have priority,' absent special circumstances."  *See Kahn v. GMC*, 889 F.2d 1078, 1081 (Fed. Cir. 1989) (quoting *William Gluckin & Co. v. Int'l Playtex Corp.*, 407 F.2d 177, 178 (2d Cir. 1969)).  However, "[w]hen a patent owner files an infringement suit against a manufacturer's customer and the manufacturer then files an action of noninfringement or patent invalidity, the suit by the manufacturer generally take[s] precedence."  *In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014).  "This 'customer-suit' exception to the 'first-to-file' rule exists to avoid, if possible, imposing the burdens of trial on the customer, for it is the manufacturer who is generally the 'true defendant' in the dispute."  *Id.*; *see also Tegic Communs. Corp. v. Bd. of Regents*, 458 F.3d 1335, 1343 (Fed. Cir. 2006) ("[T]he guiding principles in the customer suit exception cases are efficiency and judicial economy.").  In such a case, a district court may enjoin the prosecution of a previously filed lawsuit in another federal forum.  *See Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990) ("The Massachusetts court's injunction against prosecution of the Batavia action [in New York], on this basis, was within the court's discretionary authority.").  The test for determining whether to enjoin the prosecution of concurrent litigation is not the traditional four-part *Winter* test, but is "whether the issues and parties are such that the disposition of one

case would be dispositive of the other." *Id.* at 1463 (the "*Katz* test"). However, "[w]hen an injunction sought in one federal proceeding would interfere with another federal proceeding, considerations of comity require more than the usual measure of restraint, and such injunctions should be granted only in the most unusual cases." *Bergh v. Washington*, 535 F.2d 505, 507 (9th Cir. 1976).

Here, the Texas Actions would ordinarily have priority over this suit because they were filed first. *See* Compl. ¶ 37. Finisar argues the customer-suit exception applies, however, because "the infringement allegations against ROADMs sold by Finisar's customers containing Finisar WSSs are in fact really infringement allegations against Finisar WSSs." PI Mot. at 14. According to Finisar, it is in a better position to defend against the infringement allegations not only as the manufacturer of the allegedly infringing products but because it owes the Texas Defendants indemnification obligations. *See id.* at 16. Finisar further states that "because of the co-pending declaratory judgment action brought by Cisco against Capella, which this action has been found related to under L.R. 3-12, Dkt. No. 24, this Court will, in any event, take up the issues of claim construction, infringement, and damages with respect to the Patents-in-Suit whether Finisar had filed this suit or not." *Id.* at 17.

Several considerations here counsel against application of the customer-suit exception under the *Katz* test. First, resolution of this suit would not resolve the major issues in the Texas Actions because there are other suppliers of WSSs and Capella's infringement contentions are much broader than just Finisar's products—they encompass both MEMS-based WSSs (which Finisar does not manufacture, *see* Compl. ¶¶ 11, 46) and LCoS-based WSSs. *See Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1358 (Fed. Cir. 2011) (holding that the customer-suit exception is applicable only where resolution of the manufacturer's suit will resolve the "major issues" in the customer suits); *Katz*, 909 F.2d at 1464 (same).

Second, enjoining the advanced-stage litigation in the Texas Actions, particularly after that court issued its claim construction order, would not promote judicial economy and efficiency. *See Tegic Communs.*, 458 F.3d at 1343 ("[T]he guiding principles in the customer suit exception cases are efficiency and judicial economy."); *Grecia v. Target Corp.*, No. 17-cv-00323-YGR, 2018 U.S.

10

Dist. LEXIS 153178, at *5-6 (N.D. Cal. Sep. 7, 2018) (recognizing the advanced stage of litigation as a factor in determining whether the customer-suit exception applies).

Third, there are indicia of forum shopping, given that Finisar failed to intervene or join in the Texas Actions even though it knew that its WSSs might be implicated as early as last summer. *See Kahn*, 889 F.2d at 1081 (recognizing the customer-suit exception is premised on equitable principles).

Fourth, the Texas Defendants have not agreed to be bound by decisions of this Court in the event the Texas Actions are stayed. *See In re Nintendo*, 756 F.3d at 1365 (considering whether the customers agreed to be bound by the result of the manufacturer's suit as a factor); *Kahn*, 889 F.2d at 1082 (same).

Finally, Finisar alleges that it owes indemnification obligations to the Texas Defendants as another justification for the customer-suit exception. *See* PI Mot. at 16. As previously discussed, however, these alleged obligations are insufficiently pled.

Accordingly, the Court would decline to apply the customer-suit exception to the first-to-file rule.

2. <u>The Traditional Four-Factor Injunctive Relief Test</u>

In the alternative to the *Katz* test, Finisar argues that it is entitled to a preliminary injunction under the traditional injunction standard and cites to *Finisar Corp. v. Cheetah Omni, LLC*, Civil Action No. 11-cv-15625, 2012 U.S. Dist. LEXIS 198501 (E.D. Mich. Nov. 19, 2012), where the court granted preliminary injunctive relief under the test articulated in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006). *See* PI Mot. at 18-20.

In *eBay Inc. v. MercExchange, L.L.C.*, the Supreme Court reversed the Federal Circuit's "general rule that courts will issue permanent injunctions against patent infringement absent exceptional circumstances," in favor of the traditional four-part test for *permanent* injunctions where a plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. 547

U.S. 388, 391 (2006).

In applying the *eBay* test, the *Cheetah Omni* court noted that: (1) Finisar's customers requested indemnification and that Finisar will suffer irreparable injury by being forced to indemnify its customers in Texas; (2) Finisar does not have an adequate remedy at law because a confrontation with its customers regarding the extent of indemnity might strain existing relationships and potentially damage Finisar's good will, reputation, and future business opportunities; (3) Defendant Cheetah—by filing its counterclaims—has exhibited a willingness to litigate in the Eastern District of Michigan, the Eastern District of Michigan is the venue of the first filed suit, there was indicia of forum shopping, and the customer-suit exception applied; and (4) the public interest will be served if Finisar is allowed to proceed in the Eastern District of Michigan, and that the public interest is not impeded if Cheetah is enjoined from prosecuting its claims in Texas. *Id.* at *13-18. In the instant case, Finisar regurgitates this reasoning—without providing any additional legal authority—in support of its motion for preliminary injunctive relief. *See* PI Mot. at 18-20.

Assuming *arguendo* the *Katz* test does not apply, it is the *Winter* test that governs preliminary injunctions—not *ebay*. Under that test, a party must demonstrate (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in its favor, and (4) that an injunction is in the public interest. *Winter*, 555 U.S. at 20. Applying these factors to the case at bar, Finisar fails to demonstrate its entitlement to preliminary injunctive relief.

First, Finisar provides no convincing argument for its likelihood of success at permanently enjoining the Texas Actions. As noted above, the first to file rule, not the customer-suit exception rule, applies.

Second, Finisar's argument that requiring it to indemnify its customers in Texas will cause irreparable harm because its rapport with its customers will decline is not persuasive here because unlike *Cheetah Omni*, 2012 U.S. Dist. LEXIS 198501, at *10, there is no evidence that the putative customers requested Finisar indemnify them, and Finisar has insufficiently pled its alleged indemnification obligations.

Third, Finisar's contention that the balance of hardships tips in its favor because the customer-suit exception applies is without merit because, as stated above, the customer-suit exception does not apply. *See supra* Section II.B.1.

Fourth, Finisar argues the public interest weighs in its favor because "'[t]he public interest in determining the rights of intellectual property rights holders is not impeded' if Capella is enjoined from prosecuting its claims against Finisar's customers in the Texas Actions because 'those same claims will be fully adjudicated in this Court.'" *See* PI Mot. at 20 (quoting *Cheetah Omni*, 2012 U.S. Dist. LEXIS 198501, at *18). But the suit in Texas has progressed quickly; enjoining that action would delay adjudication and thus not further the public interest.

In sum, Finisar is not entitled to a preliminary injunction under the traditional *Winter* test. Because the customer-suit exception to the first-to-file rule does not apply either, Finisar's motion for a preliminary injunction would therefore be **DENIED**.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Capella's Rule 12(b)(1) motion to dismiss and **DISMISSES** Finisar's complaint with leave to amend. All other motions are **DENIED**. Finisar must file their amended complaint within thirty (30) days from the date of this order.

This order disposes of Docket Nos. 28 and 29.

**IT IS SO ORDERED**.

Dated: March 3, 2021

_____
EDWARD M. CHEN
United States District Judge

13